MATTHEW P. PREVIN (NY Bar # 2843092)
    (*admitted pro hac vice*)
matthewprevin@paulhastings.com
MICHAEL MORRILL (IL Bar # 6317386)
    (*admitted pro hac vice*)
michaelmorrill@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

SEAN D. UNGER (SB# 231694)
seanunger@paulhastings.com
KELSEY R. MCQUILKIN (SB# 340288)
kelseymcquilkin@paulhastings.com
PAUL HASTINGS LLP
101 California St, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7056
Facsimile: (415) 856-7156

*Attorneys for Defendants
Grant Money, LLC and Kikoff Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN REVELL, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>    Plaintiff,<br><br>vs.<br><br>GRANT MONEY, LLC; KIKOFF INC.; and DOES 1-10, inclusive,<br><br>    Defendants. | CASE NO. 3:25-cv-5994-TLT<br><br>**DEFENDANTS' RESPONSES TO QUESTIONS RE: OCTOBER 21, 2025 HEARING ON MOTION TO COMPEL ARBITRATION**<br><br>Date:     October 21, 2025<br>Time:     2:00 p.m.<br>Location: Courtroom 9, 19th Floor<br>Judge:    Hon. Trina Thompson |

    Defendants Grant Money, LLC and Kikoff Inc. ("Defendants") herein respond to the Court's Questions Re: October 21, 2025, Hearing on Motion to Compel Arbitration as follows:

**II. 1.** Plaintiff alleges in his Complaint—and does not dispute in his Opposition—that he was required to agree to the terms of Defendants' Customer Agreement. *See* Complaint ¶¶ 101-02 (referencing Defendants' "agreement" that "required" Plaintiff to agree to certain terms). Plaintiff agreed to the terms in December 2024 when he signed up for the mobile application. *See* Bell Decl. at ¶ 2.

**III.1.a.** The Customer Agreement does not "require[]" arbitration under 10 U.S.C. § 987(e)(3) because Plaintiff had the right to reject the arbitration provision within 30 days. *See Garrett v. Monterey Fin. Servs., LLC*, No. CV JKB-18-325, 2018 WL 3579856, at *4 (D. Md. July 25, 2018) (granting a motion to compel arbitration and holding that "the Agreement does not 'require the borrower to submit to arbitration' [under Section 987(e)(3)] because the arbitration provision contains an opt-out clause" [emphasis original]).

**III.1.b.** By declining to opt out of the arbitration agreement, Plaintiff manifested his intent to agree to the arbitration provision on the day he accepted the terms of the Customer Agreement, thereby forming a valid arbitration agreement with Defendants as of the sign-up date.

However, whether the agreement formed as of the date Plaintiff signed up for the application or after the expiration of the Right to Reject period is immaterial to the application of the arbitration clause in this lawsuit. The arbitration agreement covers "any and all past, present or future disputes, claims or controversies that have arisen or may arise between you and the Company," Bell Decl., Ex. 1 at ¶ 26. The claims alleged in the Complaint are clearly within the scope of arbitration provision, regardless of its formation date, because the Complaint was filed long after the opt-out deadline. Plaintiff has not argued otherwise.

**III.2.a.** The MLA draws many of its definitions, including "credit," from the Truth In Lending Act ("TILA") and its implementing regulation—Regulation Z. 32 C.F.R. § 232.3(d). Regulation Z requires disclosures only of *legally* enforceable obligations, rather than for moral or subjective obligations. *See* 12 C.F.R. pt. 1026, Supp. I ¶ 5(c)-1.i. ("The disclosures should reflect the credit terms to which the parties **are legally bound** at the time of giving the disclosures.") (emphasis added); *Id. at* 5(c)-1.iii ("The **legal obligation** normally is presumed to

be contained in the contract that evidences the agreement. But this may be rebutted if another agreement between the parties *legally modifies* that contract."). It follows that the MLA's definition of credit likewise requires a legally-enforceable obligation to repay. *See also* Mot. at 13-14. The flawed *Orubo* opinion and its progeny ignore this dispositive regulatory guidance in favor of a subjective definition of "obligation" that is at odds with holdings that courts must focus their inquiry "on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings." *Palmer v. Champion Mortg.*, 465 F.3d 24, 28 (1st Cir. 2006). It is the "formal terms" of the contract that control whether a transaction meets "the statutory definition of credit," rather than the subjective belief of an individual consumer. *CFPB v. Snap Fin. LLC*, 2024 WL 3625007, at *8 (D. Utah Aug. 1, 2024).

**III.2.b.** Defendants do not "enforce" an obligation to repay through preauthorized debits. Plaintiff does not dispute that he could have revoked debit authorization to repay, and the Agreement makes clear that Defendants would have had no recourse to the funds if Plaintiff had failed to repay an Advance. Mot. at 14-15; Reply at 5.

To the extent that the Court is asking whether the mere act of preauthorizing a debit creates a "debt," that cannot be true. A consumer's preauthorization to autopay a gym membership does not mean the gym issues credit to the consumer. *See* Reply at 8-9. Similarly, preauthorization, particularly one that is revocable, does not render Defendants' product "credit."

**III.3.a.** The Federal Reserve Board, which previously had rulemaking authority over TILA, determined similar fees were not finance charges because they were not mandatory. The Board considered whether fees to expedite delivery of a credit card or to arrange a payment on a credit account were "incident to" the extension of credit, and determined that they were not. *See* 12 C.F.R. pt. 1026, Supp. I ¶¶ 6(a)(2)2(ix)-(x). The Board reasoned that because consumers had free alternatives to these actions, such fees were not "incidental to the extension of credit." *See* Proposed Rule, 67 Fed. Reg. 72618, 72619 (Dec. 6, 2002); Final Rule, 68 Fed. Reg. 16185, 16187 (Apr. 3, 2003). *See also* Reply at 13-14. The same logic applies to Defendants' expedite

fees and subscription fees. *See also Veale v. Citibank, F.S.B,* 85 F.3d 577 (11th Cir. 1996) (discussed in Reply at 13-14).

**IV.1.** If the Court finds that the MLA prohibits the arbitration agreement, Defendants do not have a basis on which to compel Plaintiff's MLA claim to arbitration.

**IV.2.** Reading the MLA to include all "disputes" beyond those involving the MLA, including state law claims, would expand the statute beyond its meaning and would improperly impose an intent to displace arbitration of claims under statutes that do not contain the "contrary congressional command" required to displace the FAA. *See Espin v. Citibank, N.A.*, 126 F.4th 1010, 1016-18 (4th Cir. 2025). Because it would be improper for this Court to displace the FAA with respect to the TILA and GPLA claims, this Court should compel those claims to arbitration regardless of its decision on the MLA claim. This is especially sensible where Plaintiff purports to represent classes with respect to the GPLA and TILA claims, which would include persons who are not covered members under the MLA and therefore have no MLA claim.

DATED: October 14, 2025

PAUL HASTINGS LLP

By: /s/ *Matthew P. Previn*

SEAN D. UNGER (SB # 231694)
KELSEY R. MCQUILKIN (SB# 340288)
**Paul Hastings LLP**
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7056
Facsimile: (415) 856-7156

MATTHEW P. PREVIN
   (*admitted pro hac vice*)
matthewprevin@paulhastings.com
MICHAEL MORRILL
   (*admitted pro hac vice*)
michaelmorrill@paulhastings.com
**Paul Hastings LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000

*Attorneys for Defendants
Grant Money, LLC and Kikoff Inc.*